## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DONALD MADDY, KURT FREDRICK,
FREDERICK R. SHELLHAMMER, III,
FRANK MICHIENZI, MARIO LAUREANO,
ANTHONY CHELPATY, WILLIAM
MADDEN, STEVEN LE BLANC,
JEFFREY SCOTT WILKERSON,
JEFFREY NACARETTE, PHILLIP ERIC
BENSON, *Individually, and on behalf of all
others similarly situated,*

        Plaintiffs,

    v.

GENERAL ELECTRIC COMPANY,
a New York corporation,

        Defendant.

Civil No. 14-00490-JEI-KMW

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION PURSUANT TO §216(b) OF THE FLSA

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iv

I.   INTRODUCTION .................................................................................................. 1

II.  PLAINTIFFS HAVE MET THEIR MODEST BURDEN OF SHOWING THAT A
     NATIONWIDE POLICY AND PRACTICE EXISTS WHEREBY DEFENDANT
     REQUIRES AND PERMITS SERVICE TECHNICIANS TO DO WORK OFF-THE-
     CLOCK AND WITHOUT COMPENSATION ...................................................... 2

     A.   The standard for First Stage Conditional Certification requires only a modest factual
          showing because of the potential prejudice plaintiffs face if they do not receive timely
          notice of the lawsuit, and the lack of prejudice to defendants, because of the very high
          requirements to establish second-stage collective action certification. ........................... 2

     B.   Defendant's arguments that Plaintiffs have not identified any nationwide policies that
          result in wage and hour violations is simply incorrect – Defendant had a nationwide
          policy of (1) requiring uncompensated pre-shift computer work; (2) only compensating
          for time spent during the day while making service calls; and (3) permitting off-the-
          clock work to increase revenue and efficiency standards. ............................................... 3

     C.   Plaintiff has produced supplemental declarations showing that the same policies and
          practices of requiring and permitting off-the-clock work existed in additional
          geographic regions and under different CSMs. .............................................................. 5

III. DEFENDANT'S ARGUMENTS THAT CONDITIONAL CERTIFICATION IS
     IMPROPER, OR SHOULD BE LIMITED, ARE WRONG, PREMATURE, OR BOTH. 8

     A.   Defendant's Reliance On *Sears Roebuck* And The ECFA Is Both Wrong And
          Premature. ...................................................................................................................... 8

     B.   Defendant's Argument Their RPD Efficiency Program Is Facially Lawful Is Irrelevant,
          Because Courts Routinely Certify Collective Actions In Which Plaintiffs Allege That
          They Were Discouraged From Working Overtime Due To Efficiency Programs .......... 9

     C.   Defendant's Argument That Individual Differences Between Regions And CSMs Fails
          Because Any Differences Do Not Relate To The Policies And Practices That Lead To
          Working Without Compensation ................................................................................... 12

     D.   Defendant's Argument That It Did Not Need To Audit Self-Reported Time Records
          With Other Data Is Misplaced Because Plaintiffs Produced Evidence Showing
          Defendant Misrepresented To Plaintiffs What Time Constitutes Work And Knew
          About And Pressured Plaintiffs To Perform Work Off-The-Clock To Meet Revenue
          Targets............................................................................................................................ 13

     E.   Defendant's Argument That Notice Should Be Limited To Regions Where Plaintiffs
          Have (Or Could) Submit Declarations Should Be Rejected Because Defendant's
          Policies And Practices Requiring And Permitting Off-The-Clock Work Are Nationwide
          ........................................................................................................................................ 14

F.      Defendant's reliance on the decision in *Settles* is misplaced because *Settles* was a single plaintiff lawsuit in which the plaintiff only provided three declarations and failed to show that Defendant's CSMs were aware of the the off-the-clock work. ...................... 14

G.      Defendant's Argument That Putative Class Members Who Signed Arbitration Agreements Should Not Receive Notice Is Incorrect, As Arbitration Of Individual Claims Is Not An Issue That Is Relevant To A Conditional Collective Action Certification Motion..................................................................................................... 15

IV.     IF THE COURT DECLINES TO GRANT CONDITIONAL CERTIFICATION AT THIS STAGE, THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE ........................................................................................................................ 17

V.      CONCLUSION............................................................................................................. 17

# **TABLE OF AUTHORITIES**

**Cases**

*Ali v. Sugarland Petroleum*, 2009 U.S. Dist. LEXIS 118829 (S.D. Tex. Dec. 22, 2009) ............ 16

*Burkhart-Deal v. Citifinancial, Inc*., 2010 U.S. Dist. LEXIS 9534 (W.D. Pa. Feb. 4, 2010)  10, 14

*Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400 (5th Cir. 2011) ................................... 8

*D'Antuono v. C & G of Groton, Inc*., 2011 U.S. Dist. LEXIS 135402, 2011 WL 5878045 (D.

    Conn. Nov. 23, 2011) ................................................................................................................ 16

*Davis v. Novastar Mortg., Inc*., 408 F. Supp. 2d 811 (W.D. Mo. 2005) ...................................... 16

*In re Bank of Am. Wage & Hour Empl. Litig*. 286 F.R.D. 572 (D. Kan. 2012) ................. 5, 11, 12

*Pereira v. Foot Locker,* 261 F.R.D. 60 (E.D. Pa. 2009) ............................................................ 5, 10

*Prescott v. Prudential Ins. Co*. 729 F. Supp. 2d 357 (D. Me. 2010) ................................. 5, 11, 12

*Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639 (S.D.N.Y. 2013) .............................. 16

*Settles v. General Electric,* 2013 U.S. Dist. LEXIS 187008 (W.D. Mo. Feb. 19, 2013) ............. 15

*Titchenell v. Apria Healthcare Inc*., 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011) .... 14

*Vargas v. General Nutrition Ctrs., Inc*., 2012 U.S. Dist. LEXIS 115614 (W.D. Pa. Aug. 16,

    2012) ................................................................................................................................... 5, 10

*Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003) ........................... 16

*Whittington v. Taco Bell of America, Inc*.,  2011 U.S. Dist. LEXIS 55292, 2011 WL 1772401 (D.

    Col. May 10, 2011) ................................................................................................................... 16

I.    <u>**INTRODUCTION**</u>

Defendant's Opposition to Plaintiffs' Motion for Conditional Certification makes two main substantive arguments against conditional certification: (1) Plaintiffs have failed to identify any nationwide policies of GE that lead to wage and hour violations under FLSA; and (2) Plaintiffs have failed to show they are similarly situated with other Service Technicians working in different regions for different managers because Plaintiffs only submitted declarations from Service Technicians working under 2 out of 20 of GE's Customer Service Managers (CSM).

The Court should reject both arguments because the evidence presented undeniably demonstrates nationwide policies and practices which resulted in Plaintiffs and other Service Technicians working off-the-clock without compensation. The evidence also shows that the majority of the time, this work was performed with full knowledge of Plaintiffs' and Service Technicians' CSMs, and in other cases, the managers likely knew or should have known of the off-the-clock work performed by the Service Technicians.

Furthermore, in response to Defendant's argument that Plaintiffs cannot show that wage and hour violations extended beyond the four states for which Plaintiffs initially submitted Declarations, Plaintiffs have now submitted six additional Declarations from Opt-In Plaintiffs who worked in completely different regions under different CSMs: all had the same experience of working off-the-clock without compensation in direct violation of the FLSA.

Thus, Defendant's argument that Plaintiffs have failed to show nationwide policies ring hollow when the managers who are alleged to have supervised and known about this off-the-clock work **<u>only number 20</u>**. Courts have certified off-the-clock collective actions based on unwritten policies and practices of requiring off-the-clock work in cases involving hundreds of different managers and thousands of different employees. Plaintiffs' Declarations – as well as those submitted by Defendant – establish substantial off-the-clock work occurred under the

1

watch of 11 out of 20 of the CSMs. That pattern, alone, is more than sufficient evidence of a nationwide policy and practice that allegedly violates the FLSA, and is overwhelmingly more than sufficient to satisfy the **minimal** burden of preliminary collective action certification.

II.   **PLAINTIFFS HAVE MET THEIR MODEST BURDEN OF SHOWING THAT A NATIONWIDE POLICY AND PRACTICE EXISTS WHEREBY DEFENDANT REQUIRES AND PERMITS SERVICE TECHNICIANS TO DO WORK OFF-THE-CLOCK AND WITHOUT COMPENSATION**

    A.  **The standard for First Stage Conditional Certification requires only a modest factual showing because of the potential prejudice plaintiffs face if they do not receive timely notice of the lawsuit, and the lack of prejudice to defendants, because of the high requirements to establish second-stage collective action certification.**

Plaintiffs will not repeat the arguments raised in their initial Memorandum of Law, but it is necessary to reiterate the limited burden Plaintiffs have at the first stage of conditional collective action certification under FLSA.

The purpose of two-stage conditional collective action certification in the Third Circuit is to provide notice to putative plaintiffs of the FLSA lawsuit so these putative plaintiffs can avoid losing out under the FLSA's very strict statute of limitations. Because the filing of a FLSA collective action complaint does not toll the running of FLSA's statute of limitations for potential plaintiffs, and because wage and hour violations accrue daily over a long period, the running of the FLSA statute of limitations means as each day passes, an employee who was unlawfully denied compensation forgoes a day's worth of pay forever.

Thus, if courts *delay* conditional collective action certification until a full factual record had been developed, *and* only then determined plaintiffs were similarly situated, the delay in issuing notice would result in plaintiffs being time-barred from recovering a substantial portion of their lost wages.

On the other hand, there is no actual *prejudice* to a defendant due to conditional collective action certification. Defendants are not limited in any way in making a full argument at the second stage certification process that plaintiffs are not similarly situated, and each class member should have to pursue claims individually. Accordingly, within this Circuit, courts require only a minimal factual showing at the preliminary certification stage to determine whether the potential collective action class members were all similarly affected by Defendant's policies and practices and whether these policies and practices give rise to a **plausible** wage and hour violation under FLSA.

**B. Defendant's arguments that Plaintiffs have not identified any nationwide policies that result in wage and hour violations is simply incorrect – Defendant had a nationwide policy of (1) requiring uncompensated pre-shift computer work; (2) only compensating for time spent during the day while making service calls; and (3) permitting off-the-clock work to increase revenue and efficiency standards.**

Defendant centers its Opposition on the untenable contention that Plaintiffs failed to make the necessary modest factual showing of a nationwide policy or practice which violates FLSA to warrant conditional collective action certification.

However, Defendant submitted Declarations from three Service Technicians in two different regions establishing they all worked on their computers in the morning before traveling to their first customer stop.  *See* Def. Ex. G. at ¶ 5 (Pruiett); *See* Def. Ex. H at ¶ 6 (McDermott); Def. Ex. I at ¶ 5. Thus, Defendant's own service technician declarants **confirm** Plaintiff's evidence that Service Technicians regularly did computer work before driving to their first customer of the day -- without receiving any compensation. Even more telling, Defendant submitted Declarations from six out of 20 CSMs which, though self-serving, nevertheless admit that CSMs knew that Service Technicians had to turn on and log into their computers and do at least some work before they began their drive to their first customer. *See* Def. Ex. C at ¶ 5

(Walsh); See Def. Ex. D at ¶ 5 (Brinzer); Def. Ex. E at ¶ 7 (Nelson); Def. Ex. K at ¶ 8 (Jones); Def. Ex. F at ¶ 6 (Miller); Def. Ex. J at ¶ 7 (Andre).

Additionally, Defendant produced evidence that until mid-May 2014, Service Technicians had access to the Crystal Ball parts management computer software after hours and were not reporting their computer use as compensable time. *See* Def. Ex. A at ¶ Def. Ex. G. at ¶ 13; Def. Ex. H at ¶ 8. Two of the Service Technicians from whom Defendant secured Declarations **<u>admitted</u>** to using the Crystal Ball parts intercept system **<u>after hours</u>** until Defendant disabled after-hours access in mid-May 2014. The third Service Technician attested that he did not use Crystal Ball after hours, but other Service Technicians he worked with told him they did use Crystal Ball after hours. Def. Ex. I at ¶ 6. Defendant's Service Technician declarant Benny Prueitt worked for CSM Mark Urbin in Texas; the other two Service Technician declarants, Dan McDermott and Gary Wolfe, worked in central Florida for CSM Dan Bramblett.

Defendant also admits that it has Revenue Per Day (RPD) efficiency standards for its Service Technicians and does not dispute that failure to meet RPD standards leads to discipline and termination. Def. Ex. A at ¶ 13. Defendant also admits it sends automatic emails to CSMs when Service Technicians work through lunch and request payment, and whenever Service Technicians work more than 10 hours in a day. *See* Def. Ex. A-D, ECF Doc. 381 at p. 61.

In addition to the six Declarations submitted with Plaintiffs' original Brief, Plaintiffs now submit an additional six declarations from six additional regions demonstrating that RPD standards could only reliably be met by working off-the-clock without compensation. As discussed below, in this Circuit and throughout the country, courts **<u>routinely</u>** conditionally certify FLSA collective actions where plaintiffs allege that strict efficiency or time standards coupled with evidence off-the-clock is encouraged or permitted. *See, e.g., Pereira v. Foot*

4

*Locker,* 261 F.R.D. 60, 61 (E.D. Pa. 2009); *Vargas v. General Nutrition Ctrs., Inc.*, 2012 U.S.

Dist. LEXIS 115614, 24-25 (W.D. Pa. Aug. 16, 2012); *In re Bank of Am. Wage & Hour Empl.*

*Litig*. 286 F.R.D. 572, 586 (D. Kan. 2012); *Prescott v. Prudential Ins. Co*. 729 F. Supp. 2d 357,

367 (D. Me. 2010).

Defendant's evidence **confirms** the existence of a nationwide policy requiring and

encouraging Service Technicians to work off the clock without  compensation. Thus, Plaintiffs

have met their *modest factual burden* of showing a common policy or practice that violates

FLSA, and Plaintiffs respectfully request that the Court conditionally certify a collective action

under FLSA and facilitate notice to potential class action members.

### C.  Plaintiff has produced supplemental declarations showing that the same policies and practices of requiring and permitting off-the-clock work existed in additional geographic regions and under different CSMs.

Because potential opt-in plaintiffs can be potentially prejudiced by delaying initial

certification and notice, Plaintiffs filed their Motion for Collective Action Certification at the

earliest possible stage of this litigation. In support of their motion, Plaintiffs submitted six

declarations from Plaintiffs ("Plaintiff-Declarants") in two different geographic regions across

four states working for two different CSMs, Mike Andre and Chris Miller. These Declarations

showed that Defendant had the same policies and practices of requiring and/or permitting off-

the-clock work in both regions. Defendant has produced evidence that it has 20 CSMs at any one

time. *See* Mathers Declaration at ¶ 6.

Defendant has argued that evidence related to off-the-clock work under 2 out of 18 CSMs

is insufficient to establish a nationwide policy of off-the-clock work. Though Plaintiffs disagree,

Plaintiffs now submit six additional Declarations from Opt-In Plaintiffs Juan Ramos, Thomas

Kiss, Bradley Palmer, William Madden, Jeffrey Navarette, and Steve LeBlanc. *See* P's Exhibit

A-1-A-6, Declarations. These Declarations are from Service Technicians who worked in other

geographic regions and for different CSMs than the six original Plaintiff-Declarants: Ramos worked for CSM Dan Bramblett in central Florida, Kiss worked for CSM Sarah Burdick in Illinois, Palmer worked for CSM Vince Guida in California, Madden worked for CSM Andreco Coleman in Georgia, Navarette worked for CSM Rosa Walsh in New York, and LeBlanc worked for CSM Michale Santos in Rhode Island. All of these Declarations demonstrate Defendant's policies and practices of requiring and permitting off-the-clock uncompensated work occurred with the knowledge of these these additional CSMs.

For instance, Juan Ramos, just like the initial Plaintiff-Declarants, confirmed that he spent approximately 25-35 minutes before traveling to his first customer doing work on his GE laptop, that CSM Bramblett knew Ramos was doing so, and that up until about mid-May, Bramblett also knew and permitted after-hours computer work. *See* P's Ex. A-1 at ¶¶ 12, 17, 18. Ramos also states that the RPD efficiency system lead him to do additional off-the-clock work to meet his revenue targets. *See id.* at ¶¶ 26, 27, 35.

Kiss also states he worked on his computer before traveling to his first customer and after traveling home from his last customer, and that he regularly did other work off-the-clock in order to meet his RPD target, and that CSM Burdick knew Kiss and other Service Technicians worked off-the-clock. *See* P's Ex. A-2 at ¶¶ 12-13, 17, 18, 31-32, 26, 27, 34. Madden also confirms that he worked off-the-clock and that CSM Andreco Coleman, knew about this work. *See* P's Ex. A-4 at ¶¶ 9, 18. Navarette likewise confirms that *his* CSM, Rosa Walsh, knew he was working off-the-clock. *See* P's Ex. A-5 at ¶ 9. LeBlanc also confirmed that his CSM was aware that LeBlanc and other Service Technicians worked off the clock. *See* P's Ex. A-6 at ¶ 9. Palmer's Declaration similarly confirms Palmer worked off-the-clock on his computer before traveling to his first stop

and after traveling from his last stop, and confirms that he also did other work off-the-clock in order to meet his RPD targets. *See* P's Ex. A-3 at ¶¶ 12-18, 33, 26-31, 35-38.

More importantly, Palmer also stated that his CSM, Vince Guida, was well-aware that Palmer and other Service Technicians were doing work on their computers before and after traveling to their first stop and from their last stop. *See id.* at ¶ 18. CSM Guida was also unusually forthcoming with Palmer about other CSMs' knowledge of off-the-clock work. He told Palmer that he (Guida) had attended **annual meetings** with the other CSMs, and at those meetings, **the CSMs knew and discussed that Service Technicians were doing work on their computers in the morning before traveling to their first customer stop, and that they did this to organize their day, make their work efficient, and maintain the revenue needed**. *See id.* at ¶ 19. Kiss' CSM, and LeBlanc's CSM knew that the Service Technicians were doing computer work before traveling to their first customer

Thus, Palmer's Declaration not only shows that Defendant's policies and practices of requiring, encouraging, and permitting off-the-clock work was exactly the same in California as it was in Delaware, Pennsylvania, New Jersey, New York, Georgia, Rhode Island, Florida, and Illinois, Palmer's Declaration explains how such policies and practices were disseminated and coordinated nationwide: **through annual meetings of CSMs where the off-the-clock work was talked about and discussed.** *See id.* at ¶ 19.

CSM Guida's statements about the CSMs' annual meetings are sufficient alone to make the modest factual showing that Defendant had policies and practices of requiring, encouraging, and/or permitting Service Technicians to work off-the-clock without pay. However, even without this admission, Plaintiffs' Declarations from  Service Technicians show they worked off-the-clock under the supervision and with the knowledge of the following 8 CSMs: Mike Andre,

Chris Miller, Dan Bramblett, Sarah Burdick, Vince Guida, Andreco Coleman, Rosa Walsh, and Michael Santos. In tandem with Defendant's own Declarations from CSMs Robert Brinzer, Bobby Nelson, and Windy Jones, Plaintiffs have shown 11 out of 20 CSMs knew Service Technicians did computer work before traveling in the morning, and at least 8 out of 20 CSMs knew about permitted Service Technicians to do additional off-the-clock work. Accordingly, Plaintiffs have more than met the modest factual burden necessary to conditionally certify this matter as a FLSA collective action.

Defendant's remaining arguments advanced in its Opposition are wrong, irrelevant, premature merits' arguments, or all of the above. At this stage of the proceedings, with the evidence Plaintiffs submitted (and supplemented by Defendant's own self-damaging Declarations), the Court should grant Plaintiff's Motion, conditionally certify this matter as a FLSA Collective Action, and facilitate notice to the potential collective action members.

## III.   DEFENDANT'S ARGUMENTS THAT CONDITIONAL CERTIFICATION IS IMPROPER, OR SHOULD BE LIMITED, ARE WRONG, PREMATURE, OR BOTH.

### A.   Defendant's Reliance On *Sears Roebuck* And The ECFA Is Both Wrong And Premature.

Perhaps in recognition that Defendant's own CSMs and hand-picked service technicians **confirmed** that CSMs were instructed to perform work on their computers in their morning before traveling to their first customer, Defendant argues in summary fashion that this time is non-compensable as a matter of law under the Employee Commuting Fairness Act ("ECFA") and the unpublished and non-precedential opinion in *Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400 (5th Cir. 2011).[1]

---

[1] The Opinion makes clear on its first page that the court determined that the opinion should not be published and is not precedential, except under the limited circumstances of 5th Cir. Rule 47.5.4, which limits the precedential value of the opinion to the doctrine of *res judicata*, collateral estoppel, or law of the case.

At the appropriate stage of this litigation, Plaintiffs are confident a review of the statute and case law interpreting the ECFA will make clear that the Service Technicians' off-the-clock computer use went far beyond the limited types of activities ECFA contemplates as non-compensable. For instance, in *Sears Roebuck*, the plaintiffs spent 8.5 seconds logging into a computer and then downloading a list of addresses of service calls. Here, Plaintiffs have produced evidence it took 15 minutes just to log in to the computer, and that they then spent another 15-30 minutes reviewing calls for the day, changing calls, ordering parts, speaking to customers, and speaking with dispatchers.

However, even though Plaintiffs are confident that their off-the-clock computer activities are integral and indispensable activities not covered by the ECFA, the Court need not resolve that question at this point in the litigation. Whether an activity is compensable or non-compensable under the ECFA is a mixed question of fact and law that should be decided on a full factual record, not the minimal factual record that is required at the Preliminary Conditional Collective Action Certification stage. For instance, *Sears Roebuck* was decided on a motion for summary judgment. In fact, by arguing that the ECFA applies to Plaintiffs' and Class Members' uniform non-compensated computer usage before the drive to the first customer of the day, Defendant **concedes** there is a nationwide policy of not compensating service technicians for work performed before driving to their their first customer. This concession is another reason that the Court should grant Plaintiff's Motion for Conditional Collective Action Certification.

### B. Defendant's Argument Their RPD Efficiency Program Is Facially Lawful Is Irrelevant, Because Courts Routinely Certify Collective Actions In Which Plaintiffs Allege That They Were Discouraged From Working Overtime Due To Efficiency Programs

Defendant also argues that Plaintiff cannot claim that that Defendant's RPD efficiency standard and discipline policies lead to a *de facto* policy/practice of permitting and/or requiring

off-the-clock work. This argument is wholly unsupported by case law both in this Circuit and in others. Courts regularly conditionally certify collective actions where Plaintiffs can show that Defendant's policies, practices, or culture combine to lead to an unofficial, but *de facto*, practice of encouraging or permitting off-the-clock work, even where the employer's "official" policies prohibit off-the-clock work.

In *Pereira v. Foot Locker*, the plaintiffs alleged Foot Locker had an unofficial policy of requiring off-the-clock work by not budgeting enough time for all work to be completed, by tying manager's compensation to meeting unrealistic labor budget targets, and by punishing those who went over unrealistic budgets. 261 F.R.D. 60, 61 (E.D. Pa. 2009). Foot Locker responded by arguing their policies prohibited off-the-clock work and by producing affidavits from employees who stated they never had to work off the clock. *Id.* The court, however, rejecting at the conditional certification stage what it described as Foot Locker's volumes of evidence that no *de facto* policy existed, and held the plaintiff had met the modest factual showing necessary for conditional certification. *Id.* at 67.

Similarly, in *Vargas v. General Nutrition Ctrs., Inc*., 2012 U.S. Dist. LEXIS 115614, 24-25 (W.D. Pa. Aug. 16, 2012), the court conditionally certified a collective action based on a *de facto* policy of requiring off-the-clock work based on a showing that efficiency standards and attempts to minimize overtime likely resulted in employees working off-the-clock. Likewise, in *Burkhart-Deal v. Citifinancial, Inc*., 2010 U.S. Dist. LEXIS 9534, 6-7 (W.D. Pa. Feb. 4, 2010), the court conditionally certified a collective action where the plaintiffs alleged that an unwritten policy involving sales targets and job responsibilities discouraged the plaintiffs from recording or requesting overtime.

Courts outside this Circuit also have certified collective actions in which the plaintiffs alleged employers' facially lawful efficiency standards and discipline policies were **applied** in a manner that resulted in widespread off-the-clock work. For instance, in *Prescott v. Prudential Ins. Co.*, the court granted conditional certification where the plaintiff alleged and supported through sworn testimony that several employees worked off the clock, that they did so to meet productivity goals, that the managers knew about the off-the-clock work, and continued to assign heavy workloads and discouraged use of overtime. 729 F. Supp. 2d 357, 367 (D. Me. 2010).

Similarly, the court in *in re Bank of Am. Wage & Hour Empl. Litig.* conditionally certified a collective action based on a pattern and practice of requiring off-the-clock work **in violation of the employer's stated policies forbidding such off-the-clock**, where it was undisputed that the bank utilized labor budgets, expected its managers to adhere to those budgets and emphasized the reduction of overtime wage expenses, and the employee-plaintiffs produced evidence that "non-exempt employees worked off-the-clock (albeit under varying circumstances and to varying degrees) and that at least some of those employees did so at the direction of a manager." 286 F.R.D. 572, 586 (D. Kan. 2012) ("*Bank of Am.*"). The court found it irrelevant that it was not unlawful for the bank to institute labor budgets or attempt to minimize overtime, instead finding that the plaintiffs had produced the modest factual showing that the bank had an unofficial policy or practice of requiring off-the-clock work. *Id.*

Plaintiffs have produced evidence Defendant's RPD targets were so aggressive that they required Plaintiffs to do significant work off the clock so Plaintiffs could use their on-the-clock hours to make as many service calls as possible, and as efficiently as possible. *See, e.g.,* ECF Doc. 34-3, Declaration of Bergmann, at ¶ 24-26, at p. 6; Declaration of Chelpaty, at ¶¶ 23-25, at pp. 4-5; P's Ex. A-1 at ¶¶ 26, 27, 35. Plaintiffs have also produced evidence that CSMs were

aware that this off-the-clock work was occurring, *see, e.g.,* P's Ex. A-1 at ¶¶ 12, 17, 18; P's Ex. A-3 at ¶¶ 18-19 (Guida's admission), and Defendant's Declarations do not anywhere deny that CSMs were aware that service technicians were using the Crystal Ball computer system to manager parts and inventory off-the-clock. Accordingly, just like in the above cited cases, Plaintiffs have through their Declarations (and with help from Defendant's Declarations) made the "modest factual showing that there are similarly situated employees [of Defendant] who are victims of a common illegal practice" – i.e., Defendant's unofficial policy of requiring off-the-clock work to meet Defendant's aggressive revenue performance standards. *Bank of Am.*, 286 F.R.D. at 586; *Prescott*, 729 F. Supp. 2d at 367. Defendant's counterargument that no such *de facto* policy existed is a merits argument that should be resolved at a later date. *Id.* Accordingly, the Court should conditionally certify Plaintiffs' claims that Defendant's RPD system lead them to work off-the-clock and work through their lunch breaks without reporting it.

    **C. Defendant's Argument That Individual Differences Between Regions And CSMs Fails Because Any Differences Do Not Relate To The Policies And Practices That Lead To Working Without Compensation**

    Defendant's argument that a nationwide class action is inappropriate because of differences between the job experiences of service technicians in different zones also fails because as outlined in their initial Brief and above, Plaintiffs have shown **all** service technicians were similarly situated with respect to the specific policies and practices which lead to working without compensation.

    Plaintiffs do not dispute that different service technicians had different agreements about how much travel time would be compensable if it went over a certain length or time, or even that some CSMs may have required pre-approval for on-the-books overtime, and some CSMs only required post-work notification for on-the-books overtime. These differences, however, are simply irrelevant in the instant case.

12

All Service Technicians had access to company laptops after hours, all Service Technicians booted up and performed at least some work on those laptops in the morning before their commute without compensation, and all Service Technicians were subjected to an aggressive RPD performance standard.

Plaintiffs do not need to show that all potential class members are similar in **all respects**, only similar in the sense that they were subject to the same policies or practices that lead to off-the-clock work. Plaintiffs have more than made such a showing here, and accordingly, the Court should grant Plaintiffs' motion for conditional collective action certification.

**D.  Defendant's Argument That It Did Not Need To Audit Self-Reported Time Records With Other Data Is Misplaced Because Plaintiffs Produced Evidence Showing Defendant Misrepresented To Plaintiffs What Time Constitutes Work And Knew About And Pressured Plaintiffs To Perform Work Off-The-Clock To Meet Revenue Targets**

Defendant's argument that it was entitled to rely on Plaintiffs' self-reported time sheets and did not need to review the other data which showed the time service technicians actually worked is similarly premature.  Plaintiffs' evidence shows that Defendant's CSMs actively encouraged off-the-clock work so service technicians could efficiently make service calls throughout the day. Plaintiffs also have produced evidence showing CSMs knew service technicians were performing work off-the-clock. It is also undisputed that Defendant communicated to Service Technicians that their pre-shift computer work was non-compensable and should not be reported. Given that Defendant's actions and instructions resulted in service technicians *inaccurately* reporting their time records, Defendant cannot now rely on those same time records to argue other data records which show that work was being performed without compensation is irrelevant. Moreover, again, the issue of the use and importance of time records versus other data that recorded time worked simply is not an issue to be considered in a motion

for conditional certification, but rather is an issue relevant only in the merit stages. *See Burkhart-Deal v. Citifinancial, Inc*., 2010 U.S. Dist. LEXIS 9534, 6-7 (W.D. Pa. Feb. 4, 2010).

> **E.   Defendant's Argument That Notice Should Be Limited To Regions Where Plaintiffs Have (Or Could) Submit Declarations Should Be Rejected Because Defendant's Policies And Practices Requiring And Permitting Off-The-Clock Work Are Nationwide**

As outlined above, Plaintiffs have now submitted six additional Declarations showing that the same policies of requiring off-the-clock work and pre-shift and post-shift computer usage existed beyond the jurisdictions of the two original CSMs whose Service Technicians initiated the lawsuit. At present, 68 plaintiffs from 13 states have opted into this lawsuit. CSM Vince Guida stated all 20 CSMs met at annual meetings and knew of and discussed the Service Technicans' off-the-clock work. Defendant has not shown that any of the Service Technicians in any of the regions did not boot up and use their computers in the morning before their drive to their first customers, or were not subject to the RPD efficiency standard. Accordingly, there is no basis to limit the scope of this conditional collective action. Plaintiffs have made much more than a modest factual showing that the policies related to off-the-clock work applied nationwide. Accordingly, the Court should conditionally certify the instant matter as a collective action under FLSA and facilitate notice to the potential collective action members. *See Titchenell v. Apria Healthcare Inc*., 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011) (modest factual showing burden met by providing two affidavits of individuals who were subjected to same unlawful policy at two branches of defendant when defendant employed 2,087 potential plaintiffs in over 500 branches throughout United States).

> **F.   Defendant's reliance on the decision in *Settles* is misplaced because *Settles* was a single plaintiff lawsuit in which the plaintiff only provided three declarations and failed to show that Defendant's CSMs were aware of the the off-the-clock work.**

14

In their desperate attempt to attack Plaintiffs' evidence in an attempt to avoid the minimal standard required in this first stage of conditional collective action certification, Defendant attempts to rely on a completely different case, *Settles v. General Electric,* 2013 U.S. Dist. LEXIS 187008 (W.D. Mo. Feb. 19, 2013), which was brought by a single plaintiff, unlike this case currently brought by 10 Named Plaintiffs and 58 Opt-In Plaintiffs from 13 different states. Also, unlike in *Settles,* the Declarations in this case, including those filed by Defendant, establish that over half of the CSMs, 10 out of 20, knew of the widespread off-the-clock performed for years by Plaintiffs and other similarly situated Service Technicians.

The *Settles* court declined to conditional certify a collective action based on a superficially similar claim in which a Service Technician alleged that Defendant's RPD performance standards caused him to work off-the-clock. The *Settles* decision was based on the plaintiff's failure to produce any evidence that any CSM or for that matter, any other GE manager, knew about the plaintiff's off-the-clock work.

Clearly, Plaintiffs have addressed that issue here, by demonstrating that the off-the-clock work occurred under the supervision of 10 out of 20 CSMs, and the CSMs had specific knowledge that off-the-clock work was being performed. Furthermore, Plaintiffs have produced CSM Guida's statement that **all** of the CSMs met at annual meetings and discussed the off-the-clock work performed by Service Technicians.

Accordingly, the very reason *Settles* was not certified is the reason the instant matter should be certified: Plaintiffs have produced evidence that at least half of the CSMs knew that the Service Technicians were performing work off-the-clock.

### G. Defendant's Argument That Putative Class Members Who Signed Arbitration Agreements Should Not Receive Notice Is Incorrect, As Arbitration Of Individual Claims Is Not An Issue That Is Relevant To A Conditional Collective Action Certification Motion

15

Defendant has also argued that even if the Court grants Plaintiffs' Motion, the Court should limit the provision of notice to potential collective action members who have not signed arbitration agreements with Defendant. However, courts have been clear that whether some potential collective action members have arbitration agreements is irrelevant to the questions presented on a motion for conditional collective action certification. *See, e.g., Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 646-647 (S.D.N.Y. 2013). As was held in *Romero*, the existence of arbitration agreements with some of the putative collective action members does not create any difference between these potential plaintiffs and the Named Plaintiffs with respect to whether they are similarly situated under FLSA. *Id.*

In other words, the validity of any potential arbitration agreement is wholly irrelevant to the question of whether Defendant's conduct lead to violations of FLSA for the potential collective action members who may have arbitration agreements. For the Court to decide to exclude collective action members from the provision of Court-facilitated notice of this claim would be for the Court to reach a merits-based determination that the arbitration agreements are valid and binding. Thus, courts have routinely refused to limit notice to potential plaintiffs without arbitration agreements. *See, e.g., Romero*, 968 F. Supp. 2d at 646-647; *D'Antuono v. C & G of Groton, Inc.*, 2011 U.S. Dist. LEXIS 135402, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011); *Whittington v. Taco Bell of America, Inc.*,  2011 U.S. Dist. LEXIS 55292, 2011 WL 1772401 (D. Col. May 10, 2011); *Ali v. Sugarland Petroleum*, 2009 U.S. Dist. LEXIS 118829, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009); *Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003).

Just like in *Romero*, Defendant has not addressed at all the "cases holding that consideration of the validity of arbitration agreements is inappropriate in the context of a motion to approval an FLSA collective action." 968 F. Supp. 2d at 646-647. Given that Defendant has not even attempted to distinguish or argue why these above cases are inapplicable or should not apply, this Court should follow *Romero* and the above cited cases and hold that questions of arbitrability are "best suited to the second certification stage, where, on a fuller record, the Court will examine whether the plaintiffs and opt-ins are in fact similarly situated." *Id.*

Accordingly, the Court should not limit notice to the putative collective action members without arbitration agreements, but should instead allow notice to all potential members who are similarly situated to Plaintiffs.

## IV.  IF THE COURT DECLINES TO GRANT CONDITIONAL CERTIFICATION AT THIS STAGE, THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE

Plaintiffs believe they have overwhelmingly submitted sufficient evidence to meet the modest factual showing necessary to warrant the granting of conditional collective action certification and the sending of notice. However, if the Court believes otherwise, Plaintiffs request any denial of this Motion be without prejudice to permit Plaintiffs in the future to submit additional declarations from additional opt-in plaintiffs, and take additional discovery that will demonstrate unequivocally Defendant's policies and practices that required, encouraged, and permitted the Plaintiffs and the putative collective action members to work off the clock.

## V.  CONCLUSION

For the above reasons, the Court should grant Plaintiff's Motion for Conditional Certification, and facilitate notice of this lawsuit to the potential collective action members.

Respectfully Submitted,

*/s/ Justin L. Swidler*

Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Ste. 10
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

*/s/ Robert D. Soloff*

Robert D. Soloff, Esq.
**ROBERT D. SOLOFF, P.A.**
7805 S.W. 6th Court
Plantation, Florida 33324
Phone: (954) 472-0002
Fax: (954) 472-0052

*/s/ Allen Eichenbaum*

Allen Eichenbaum, Esq.
**ALLEN EICHENBAUM**
10059 Northwest 1st Court
Plantation, Florida 33324
Phone: (954) 916-1202
Fax: (954) 916-1232

July 17, 2014

18