UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD MADDY, KURT FREDRICK, FREDRICK R. SHELLHAMMER, III, FRANK MICHIENZI, MARIO LAUREANO, ANOTHONY CHELPATY, WILLIAM MADDEN, STEVEN LE BLANC, JEFFREY SCOTT WILKERSON, JEFFREY NACARETTE, PHILLIP ERIC BENSON, BRADLEY PALMER, THOMAS KISS, Individually, and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GENERAL ELECTRIC COMPANY, a New York corporation,<br><br>　　　　Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 14-0490<br>　　　(JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

SWARTZ SWIDLER, LLC
By: Justin L. Swidler, Esq.
　　Richard S. Swartz, Esq.
1878 Marlton Pike East, Ste. 10
Cherry Hill, New Jersey, 08003

ROBERT D. SOLOFF, P.A.
By: Robert D. Soloff, Esq.
7805 S.W. 6th Court
Plantation, Florida 33324

ALLEN EICHENBAUM
By: Allen Eichenbaum, Esq.
10059 Northwest 1st Court
Plantation, Florida 33324
　　Counsel for Plaintiffs

1

LITTLER MENDELSON, P.C.
By:  Nina Markey, Esq.
     Rachel Fendell Satinsky, Esq.
     Aaron Reed, Esq. (pro hac vice)
     Daniel B. Boatright, Esq. (pro hac vice)
1601 Cherry Street, Suite 1400
Philadelphia, Pennsylvania 19102
     Counsel for Defendant General Electric Company


**IRENAS**, Senior District Judge:

Plaintiffs, service technicians for General Electric Company's ("GE" or "Defendant") Appliances Division, brought this putative collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") to recover allegedly unpaid overtime compensation from Defendant.

Currently pending before the Court is Defendant's motion to compel arbitration of claims asserted by two opt-in Plaintiffs, Jeremy Gifford and Jesse Guerra.  For the reasons explained herein, Defendant's motion is **DENIED.**

## I.   BACKGROUND[1]

Plaintiffs Gifford and Guerra worked or work currently as service technicians for Defendant.  Mr. Gifford began working for Defendant in February 25, 2002, and remains employed by

---

[1] The background facts of this case are set out in detail in the Court's Opinion granting Plaintiffs' prior motion to conditionally certify this collective action.  *See Maddy v. General Elec. Co.*, No. 14-490 (JEI/KMW), 2014 WL 5934114 (D.N.J. Nov. 14, 2014).  The Court repeats only those facts relevant to the present motion.

Defendant today.  (Def.'s Motion at 1)  Mr. Guerra worked for Defendant from March 6, 2000, to August 1, 2014.  (Id.)

Service technicians in GE's Appliances Division work across 96 "zones" within the United States.  In 42 of the 96 zones, service technicians are represented by various unions though collective bargaining agreements ("CBAs").  In the remaining 54 zones, service technicians are not represented by a union.  All service technicians receive an hourly wage, plus overtime for hours worked in excess of 40 per week, or as otherwise required by local law or applicable CBAs.  (Declaration of Kristin Mathers ("Mathers Decl."), Docket No. 38-1 ¶ 10)

Defendant now asks the Court to compel certain opt-in Plaintiffs who were not represented by a union, Mr. Gifford and Mr. Guerra, to arbitrate their claims pursuant to GE's "Solutions" program, an alternative dispute resolution procedure.  Under the Solutions program, "Covered Employees and the Company are not allowed to litigate a Covered Claim in any court" (Solutions, Ex. 2 to Def.'s Reply at 7)  Instead, Covered Employees must pursue Covered Claims through a particular procedure laid out in the Solutions documents.[2]  Arbitration, the final step in the program, is administered by a Dispute

---

[2] There are four levels a Covered Employee must follow: (I) meeting with a direct manager, (II) meeting with a higher level manager and an HR representative, (III) mediation, and (IV) arbitration.  A Covered Employee may request to skip Level I, and, "[w]here circumstances warrant, the parties also may agree to skip Solutions Level II."  (2009 Solutions at 7)

Resolution Organization ("DRO") that GE designates.  (2009 Solutions at 9)

Defendant claims that Plaintiffs Gifford and Guerra received training on Solutions and "expressly agreed" to arbitrate all Covered Claims pursuant to the Solutions program by way of an Acknowledgement form each signed in September 2009.  (Def.'s Motion at 3)  The Acknowledgements, dated September 22, 2009, and September 23, 2009, respectively, state as follows:

> You have received and reviewed the Solutions training and have been provided with an electronic copy of the full Solutions procedure document.
>
> You have been informed that by continuing your employment with the Company after June 30, 2009, you will be bound by the terms of the Solution procedure.
>
> As detailed more fully in the Solutions procedure and training, Solutions provides that Covered Claims (as defined in the Solutions procedure) against the Company must be pursued through the Solutions Procedure.  Covered Claims against the Company may not be pursued in court, or on a class action basis either in court or through Solutions.  An arbitrator's award is the exclusive, final and binding determination of any and all Covered Claims that proceed to the fourth level of Solutions.

(Exs. 2 & 3 to Def.'s Motion)

Under Solutions, "Covered Claims" include claims "relating to compensation, promotion, demotion or other employment actions," among others.  (2009 Solutions at 5)  The parties do not dispute that the claims in this case, if Gifford and Guerra were subject to Solutions, would fall under this definition of

4

Covered Claims.  The meaning of "Covered Employee," on the other hand, is less clear.

In its original moving papers, Defendant attached the 2008 Solutions program documents, under which "Covered Employees" included only "Executive Band and above employees in all GE businesses."  (2008 Solutions at Appendix A, p. 24)  In response to Plaintiffs' opposition, and apparently conceding that the 2008 Solutions program documents were not applicable to Plaintiffs, Defendant submitted the 2009 version of Solutions with its reply brief.  The 2009 Solutions program documents expands the 2008 definition of "Covered Employees" to include "All GE Consumer & Industrial[3] employees in Senior Professional band positions and below who are classified by the Company as exempt, and non-exempt salaried employees."  (2009 Solutions at Appendix A, p. 24)

During oral argument, Defendant stated for the first time that "salaried employees," as defined internally by GE and understood within the Solutions documents, includes service technicians paid on an hourly basis.  Defendant then submitted a new Declaration from Melissa Lee, an Employee Relations Specialist for the business segment that employs Plaintiffs, who claims that "Service technicians are designated as 'non-exempt

---

[3] Defendant states that putative class members, all GE service technicians, work within this division.  (Def.'s Reply at 2)

salaried employees' within GE's internal payroll system for benefits purposes only, i.e. so that they receive the same benefits as salaried employees." (Meliessa Lee Declaration ("Lee Decl."), Docket No. 91, at ¶ 3)

Defendant presently moves to compel arbitration of Plaintiffs Gifford and Guerra's FLSA claims.

## II.  STANDARD

Under the Federal Arbitration Act ("FAA"),

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The FAA states further that any agreement to settle a dispute by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. at § 4.

There is a "strong federal policy in favor of resolving disputes through arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009). However, "arbitration is a matter of contract and a party cannot be required to submit to any dispute he has not

6

agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1983). Before compelling arbitration, courts must therefore determine: (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Century Indem.*, 584 F.3d at 523.

Since Plaintiffs do not contend that the particular dispute in this case over uncompensated overtime work would fall within the scope of the Solutions program, the only relevant inquiry here is whether Plaintiffs Gifford and Guerra were bound by Solutions in the first place. Plaintiffs argue that no such valid agreement existed because the Solutions's terms do not apply to service technicians, are indefinite and unconscionable, and violate the National Labor Relations Act.

### III. ANALYSIS

Defendant's motion to compel must fail for two reasons. First, Defendant has not submitted evidence sufficient to show that the Acknowledgments Gifford and Guerra signed constituted valid agreements to the Solutions Procedure. Second, even assuming their agreement to Solutions, Plaintiffs Gifford and Guerra do not fall under the category of "Covered Employees" subject to the program, which means that they were not bound to arbitrate their present claims.

7

**1. Acknowledgment Forms**

The documents Defendant submitted in support of its motion to compel arbitration fail to establish that Plaintiffs Gifford and Guerra agreed to commit to the 2009 Solutions Program.

"For a Court to compel arbitration, it initially must find that there is a valid agreement because the basis for contractual arbitration is consent, not coercion." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). Although the FAA requires that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), courts apply ordinary state law principles of contract formation when determining whether the parties have agreed to arbitrate, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

As an initial matter, Plaintiffs ask the Court to apply Texas law with respect to contract formation issues in this case. The Solutions Program contains a "Governing Law" provision stating that the Solutions "shall be construed, interpreted and applied in accordance with the law of the State of New York, without regard to choice of law principles." (2009

Solutions at 10) Plaintiffs argue that this clause does not reach issues regarding whether a valid agreement to arbitrate existed between the parties. For this reason, Plaintiffs request that the Court look to Texas law, since Gifford and Guerra live and work in the State of Texas.

The Court agrees with Plaintiffs that Solution's "Governing Law" provision is, by its own terms, limited to the construction, interpretation and application of the Solutions Program. Since Plaintiffs Gifford and Guerra reside and work in the State of Texas, the Court will apply Texas principles of contract formation when determining whether Gifford and Guerra agreed to arbitrate their claims against Defendant.

"Under Texas contract law, a legally enforceable contract consists of (1) an offer, (2) an acceptance, (3) a meeting of minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 100 (Tex. App. 2013) (internal quotations omitted).

Absent from the Acknowledgments Gifford and Guerra signed is any explicit language of actual agreement. On its face, each "Acknowledgment" is merely that – a letter confirming that the signee has been informed that his continued employment binds him to the Solutions procedure. But the fact that Plaintiffs

9

Gifford and Guerra have been *informed* of Solutions does not mean that they *agree* to the substance of the program.

Defendant points out that other courts have routinely granted motions to compel arbitration pursuant to Solutions or other GE alternative dispute resolution programs. *See Pingel v. General Elec. Co.*, No. 3:14 CV-00632, 2014 WL 7334588 (D. Conn. Dec. 19, 2014); *Tweedy v. GE Capital Retail Finance*, No. 1:13-cv-00038, 2014 WL 695824 (S.D. Ohio Feb. 24, 2014); *Curtis v. GE Capital Corp.*, No. 5:12CV133-RLV, 2013 WL 4212932 (W.D.N.C. Aug. 15, 2013); *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390 (S.D.N.Y. 2013); *Santos v. GE Capital*, 397 F. Supp. 2d 350 (D. Conn. 2005); *Gonzalez v. GE Group Administrators, Inc.*, 321 F. Supp. 2d 165 (D. Mass. 2004). However, the acknowledgements in these cases contain explicit "agreements," and, in the Court's opinion, actually militate against finding an enforceable contract in this case.

In *Pingel*, the acknowledgment form plaintiff signed stated that her signature "constitutes acknowledgement of [her] receipt and review of a copy of and *agreement to* the Solutions Procedure." 2014 WL 7334588, at *1 (emphasis added). In *Tweedy*, *Curtis*, *Santos*, and *Gonzalez*, which all involved an earlier form of Solutions called RESOLVE, the acknowledgments signed by each plaintiff read "I acknowledge that I have received and reviewed a copy of the 'RESOLVE Program Handbook.'

10

*I agree* to resolve disputes in accordance with the terms of the 'RESOLVE Guidelines' . . ." *Tweedy*, 2014 WL 695824, at *2; *Curtis*, 2013 WL 4212932, at *1; *Santos*, 397 F. Supp. 2d at 354-55; *Gonzalez*, 321 F. Supp. 2d at 168 (emphasis added).[4] The acknowledgements Plaintiffs Gifford and Guerra signed lack the language of agreement so clearly set forth in these other acknowledgment forms.

    Defendant argues that the words "I agree" are not necessary in the acknowledgement forms to enforce compliance with the Solutions program. Under Texas law, an employee "accepts" an arbitration agreement, as a modified condition of employment, if he receives notice that unequivocally communicates definite changes in his employment terms and continues working with knowledge of these modified employment terms. *In re Dillar Dept. Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006). But this case is not so simple. The Acknowledgments Gifford and Guerra signed do not specify which version of Solutions they received. This is particularly important as it relates to the parties' dispute of which employees are "covered" under Solutions, a designation that apparently expanded from the 2008 version of the program to the 2009 version. The Court discusses this issue at length below, but it deserves mentioning here.

---

[4] The other cases Defendant references do not contain the complete language of the relevant acknowledgment forms.

If Gifford and Guerra received the 2008 version of Solutions, which identified "Covered Employees" as "Executive Band and above," they would have had no reason to believe that the program applied to them.  If they received the 2009 version, which expanded "Covered Employees" to include the division of GE that employs Plaintiffs, they would read that "exempt and non-exempt salaried employees" in that division are bound by Solutions.  However, Gifford and Guerra are unmistakably hourly employees.  As explained below, Defendant claims to have an internal definition of "salaried" that includes service technicians, but that internal definition does not appear in the Solutions Program documents or in the Acknowledgments.  Again, a person in Gifford and Guerra's shoes would quite reasonably believe himself not to be "covered."  Defendant submitted a Declaration from Eric Leef stating that the 2009 version is what service technicians like Gifford and Guerra "would have received and been trained on."  (Leef Decl., Ex. A to Def.'s Reply, at ¶ 6)  The Court does not find this conditional statement entirely reassuring.[5]  The combination of Acknowledgments without clear language of assent, and ambiguity as to which version of

---

[5] Further, considering that Defendant originally submitted the 2008 version in support of the present motion (and in support of the prior motion for conditional certification), it is not a stretch to imagine that Gifford and Guerra may not have received the 2009 version prior to signing the Acknowledgment forms.

12

Solutions Gifford and Guerra received, do not "unequivocally communicate definite changes" in their employment.

The Court will not make assumption after assumption in the absence of express statements and direct evidence, particularly where a sophisticated party like Defen ndant has in other cases been so explicit, to hold that Plaintiffs Gifford and Guerra waived their statutory rights to pursue their FLSA claims in a court of law.  It is unclear that Gifford and Guerra agreed they were bound by the Solutions Procedure.  It is unclear which version of Solutions they reviewed in the first place.  And it is unclear how they would recognize themselves as "salaried employees" under the 2009 version of the program.  For these reasons, the Court finds that the Acknowledgment forms did not constitute valid agreements to the 2009 Solutions procedure and, more specifically, its arbitration requirement.  Defendant's motion to compel arbitration will therefore be denied.

### 2. "Covered Employees"

Even if Plaintiffs Gifford and Guerra agreed to be bound by the Solutions procedure, the terms of the Solutions program do not seem to require service technicians, who are hourly employees, to arbitrate their current claims against Defendant. Gifford and Guerra cannot be said to have signed a valid agreement to arbitrate through their Acknowledgments if the

13

underlying Solutions program, by its own terms, does not bind them to arbitration.

Under the 2009 Solutions Program documents, the group of "Covered Employees" who cannot litigate any "Covered Claims" in any court includes "[a]ll GE Consumer & Industrial employees in Senior Professional band positions and below who are classified by the Company as exempt, and non-exempt salaried employees." (2009 Solutions at Appendix A, p. 24)  Defendant argues that this description of Covered Employees includes Plaintiffs Gifford and Guerra.

In response, Plaintiffs highlight that Gifford and Guerra are *hourly*, not salaried employees, and therefore not Covered Employees under Solutions.  Plaintiffs point to HR manager Kristin Mathers's Declaration, which Defendant submitted in opposition to Plaintiffs' prior motion for conditional certification, which states that "service technicians are paid an hourly wage, plus overtime for hours worked in excess of 40 per week . . ." (Mathers Decl., Docket No. 38-1)

Defendant did not address this apparent discrepancy in their motion papers.  However, Defendant stated during oral argument that GE internally designates service technicians as "salaried employees," even though the technicians receive wages on an hourly basis.  Defendant also submitted a Declaration from Employee Relations Specialist Melissa Lee, who claims that

14

"Service technicians are designated as 'non-exempt salaried employees' within GE's internal payroll system for benefits purposes only, i.e. so that they receive the same benefits as salaried employees." (Lee Decl., Docket No. 91, at ¶ 3) This expanded definition of "salaried" does not appear anywhere in the Solutions Program documents.

This dispute over the term "salaried employees" requires the Court to interpret that language as used within the Solutions program documents. Pursuant to Solution's "Governing Law" provision, the Court will interpret this term "in accordance with the law of the State of New York."

Plaintiffs ask the Court not to consider evidence extrinsic to the agreement when construing a plain and unambiguous term such as "salaried employees." S*ee Airco Alloys Div. v. Niagra Mohawk Power Corp.*, 76 A.D.2d 68, 76 (N.Y. App. Div. 4th Dep't. 1980) ("The rule is well settled that the construction of a plain and unambiguous contract is for the court to pass on, and that circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself.") (internal quotations omitted). Indeed, "Salaried employees" is not an ambiguous term. The FLSA explicitly defines what it means to be paid on a "salary basis":

> An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each

15

> pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602.  Plaintiffs Gifford and Guerra, who receive compensation on an hourly basis for their work as service technicians, would clearly not fall within this accepted definition, or any other plain reading of "salaried."

However, the context of "salaried" within the Solutions Program documents establishes some confusion in an otherwise definite term.  Specifically, Solutions provides that "Covered Employees" include "GE Consumer & Industrial employees . . . who are *classified by the Company* as exempt, and non-exempt salaried employees."  (Solutions at Appendix A, p. 24) (emphasis added) In addition, the description of "Covered Employees" excludes from Solutions particular "GE Consumer & Industrial hourly employees" who are covered by earlier alternative dispute resolution programs.  (2009 Solutions at Appendix A, p. 25) This explicit exclusion assumes that some hourly employees are classified as "salaried" (i.e. there would not be a need to exclude such employees if that was not the case).  Since Defendant does not detail within Solutions who exactly fits within this classification, the provision is ambiguous.

"In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and

favorably to a party who had no voice in the selection of its language."[6]  *Jacobson v. Sassower*, 66 N.Y.2d 991, 993, (1985)  Defendant alone is responsible for the language in the Solutions documents, and the Court must therefore construe it in Plaintiffs' favor.

   The Court also recognizes that, if Gifford and Guerra did not consent to the terms of the Solutions program, which they had no apparent ability to negotiate, their only available course of action would be quitting their jobs.  In that regard, the alleged agreement to abide by Solutions resembles a contract of adhesion.  While contracts of adhesion are not themselves unenforceable, the Court is compelled to interpret such "take it or leave it" agreements against the drafter.[7]  *See* 11 Williston on Contracts § 32:12 (4th ed. 1990) ("[A]ny contract of adhesion, which is a contract entered without any meaningful negotiation by a party with inferior bargaining power, is particularly susceptible to the rule that ambiguities will be construed against the drafter.").

   Defendant relies on assertions in the Lee and Leef Declarations that GE's internal payroll system designates

---

[6] Although the FAA embodies a strong federal policy favoring arbitration, the issue here remains whether the language of Solutions provides the basis for a valid agreement to arbitrate between the parties in the first place. Consequently, state law contract principles apply.

[7] The Court does not find Solutions to be unconscionable in this regard, but notes that it must scrutinize the underlying documents in a manner more favorable to the party that had no choice but to agree.

service technicians as salaried for benefits purposes, and that service technicians were trained on Solutions. Yet, there is no evidence that a designation "for benefits purposes only" also extends to GE's larger "classification" for the purposes of the Solutions program. Defendant alone controlled the language of Solutions and there is simply no indication from the Solutions program documents that service technicians like Gifford and Guerra fall within Defendant's purported definition of salaried.[8]

For the purposes of this motion, the Court resolves this ambiguity in favor of Plaintiffs and finds that Gifford and Guerra are not "Covered Employees" under the Solutions program, and therefore not bound by the Solutions procedure.[9]

**IV.**

For the reasons set forth above, the Court will **DENY** Defendant's Motion to Compel Arbitration. An appropriate Order accompanies this Opinion.


Date: January 21, 2015

                                                     s/ Joseph E. Irenas
                                                   **Joseph E. Irenas, S.U.S.D.J.**

---

[8] That some "hourly" employees are explicitly excluded from Solutions creates even more confusion as to what "salaried" means and does not provide any guidance about service technicians specifically.

[9] In light of these findings, the Court need not fully address Plaintiffs' remaining arguments regarding the substance of the Solutions procedure.