UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD MADDY, KURT FREDRICK, FREDRICK R. SHELLHAMMER, III, FRANK MICHIENZI, MARIO LAUREANO, ANOTHONY CHELPATY, WILLIAM MADDEN, STEVEN LE BLANC, JEFFREY SCOTT WILKERSON, JEFFREY NACARETTE, PHILLIP ERIC BENSON, BRADLEY PALMER, THOMAS KISS, Individually, and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>     v.<br><br>GENERAL ELECTRIC COMPANY, a New York corporation,<br><br>         Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 14-0490<br>         (JEI/KMW)<br><br>**OPINION** |

**APPEARANCES:**

SWARTZ SWIDLER, LLC
By:  Justin L. Swidler, Esq.
     Richard S. Swartz, Esq.
1878 Marlton Pike East, Ste. 10
Cherry Hill, New Jersey, 08003

ROBERT D. SOLOFF, P.A.
By:  Robert D. Soloff, Esq.
7805 S.W. 6th Court
Plantation, Florida 33324

ALLEN EICHENBAUM
By:  Allen Eichenbaum, Esq.
10059 Northwest 1st Court
Plantation, Florida 33324
     Counsel for Plaintiffs

1

```
LITTLER MENDELSON, P.C.
By:  Nina Markey, Esq.
     Rachel Fendell Satinsky, Esq.
     Aaron Reed, Esq. (pro hac vice)
     Daniel B. Boatright, Esq. (pro hac vice)
1601 Cherry Street, Suite 1400
Philadelphia, Pennsylvania 19102
     Counsel for Defendant General Electric Company
```

**IRENAS**, Senior District Judge:

Plaintiffs, service technicians working for the General Electric Company ("GE" or "Defendant"), brought this putative collective action pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") to recover allegedly unpaid overtime compensation from Defendant.

Pending before the Court is Plaintiffs' Letter Brief Seeking to Facilitate Curative Notice and Enjoin Defendants from Further Interfering with Court-Facilitated Notice. (Docket No. 113)  For the reasons explained herein, Plaintiffs' request is **GRANTED** in part.

## I. BACKGROUND[1]

This putative collective action rests on Plaintiffs' allegations that service technicians in GE's Appliances Division routinely, and with Defendant's knowledge, performed work "off

---

[1] The Court sets out the underlying facts of the case in detail in its Opinion granting Plaintiffs' prior motion to conditionally certify this collective action.  See Maddy v. General Elec. Co., No. 14-490 (JEI/KMW), 2014 WL 5934114 (D.N.J. Nov. 14, 2014).  The Court repeats only those facts relevant to the present motion.

2

the clock" in order to satisfy daily revenue requirements. As one of their principal claims, Plaintiffs assert that service technicians, at Defendant's direction, must log into their computers each morning to obtain their first customer calls and prepare for the day, but that Defendant has not compensated Plaintiffs for such work.

The Court preliminarily certified this matter as a collective action on November 14, 2014, and, following the provision of court-facilitated notice to all putative class members, a ninety-day opt-in period began on January 28, 2015.

Less than one month later, on February 23, 2015, Customer Service Manager ("CSM") Vince Guida, who supervises Southern California Region service technicians, sent an email to his technicians with the subject heading "Time worked and time reporting – MUST READ." (Ex. 1-C to Pls.' Ltr.) The message states, in relevant part,

> Team,
>
> Over the past years, multiple emails have been sent, PowerPoint presentations shared, and during tech meetings I have stressed the importance of the Company's Timecard Guidelines. It is imperative that you understand there is to be absolutely NO GE work performed off the clock. Any time spent performing GE work needs to be reported on your timecard. This includes, but is not limited to, sending work related emails before you start your work day or after you end your work day, as well as accessing GE Systems such as TPTP to conduct any GE work. If you have to do work related tasks before your start time or after your start time, you are required to request approval from me in advance, and

>then once approved, the time must be added to your time card.
>. . .
>So there is no misunderstanding, the above should be considered direct work instruction and failure to abide by these instructions will be considered insubordination, a category 2 work rule violation, and discipline will ensue – up to and including termination.
>. . .
>**Use of the company laptop**
>
>You may look at your route prior to departing your home in order to know where your first stop will be.  However, as stated in Paragraph 1 above, you should not be accessing TPTP for any other purpose outside your workday.  Should you perform company work, it must be reported.

(Id.)

Defendant claims that Mr. Guida sent this email as part of the ordinary course of business following annual "Fast Start" presentations held less than two weeks earlier during which he reviewed timekeeping policies and procedures. (Def.'s Opp. at 1)  In a Declaration submitted on behalf of Defendant, Mr. Guida states that he often sends "various follow up emails after the Fast Start meetings regarding relevant rules, policies and procedure." (Guida Decl., Ex. 1 to Def.'s Opp., at ¶ 5)  Mr. Guida attaches a virtually identical May 13, 2014, email from which he cut and pasted the majority of the February 23, 2015, email. (5/13/2014 email, Ex. 1-A to Def.'s Opp.)  Mr. Guida refers to the February 2015 and May 2014 communications as "reminder emails." (Guida Decl. ¶¶ 6-9)

4

Plaintiffs submitted a letter brief to the Court on March 4, 2015, arguing that Mr. Guida's February 2015 email constitutes an "improper and coercive" communication meant to deter participation in the pending lawsuit.  As a remedy, Plaintiffs ask the Court for an order (1) requiring Defendant to send a curative notice to all service technicians, and (2) prohibiting Defendant and its managers from sending similar mass communications concerning timekeeping to putative class members for the duration of the opt-in period.  Defendant filed its opposition to Plaintiffs' request and the Court held oral argument on March 17, 2015.

## II.  STANDARD

Federal courts have generally held that defendants in § 216(b) actions are not barred from communicating with prospective opt-in plaintiffs.  *See Bobryk v. Durand Glass Mfg. Co., Inc.*, No. 12-CV-5360 (NLH/JS), 2013 WL 5574504, at *4 (Oct. 9, 2013) ("[T]here is no bright-line rule barring a defendant from speaking with putative class members."); *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1225 (S.D. Ala. 2008) ("As a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit"); *Parks v. Eastwood Ins. Servs., Inc.*, 235

5

F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) ("The law is not settled on this issue, but the majority view seems to be against a ban on pre-certification communication between Defendant and potential class members.").

However, district courts have the authority to limit communications between parties and prospective class members. *See Gulf Oil, Co. v. Bernard*, 452 U.S. 89 (1981).  In *Gulf Oil*, the Supreme Court held that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."[2]  *Id*. at 100.  To warrant a limitation on communications between a defendant and putative class members, "the plaintiff must show (1) that a particular form of communication has occurred or is threatened to occur and (2) that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation."  *Bobryk*, 2013 WL 5574504, at *4 (internal quotations omitted).

"Courts have ordered a variety of remedial measures for misleading and improper communications, including prohibiting

---

[2] This Court has held that prospective plaintiffs in a FLSA action are, like pre-certification plaintiffs in Rule 23 class actions, still "unrepresented parties."  *Bobryk*, 2013 WL 5574504, at *4.

further *ex parte* communications, issuing corrective notices, [and] extending the opt-in period." *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1109 (D. Colo. 2013).

### III. ANALYSIS

The Court will grant Plaintiffs' request for an order requiring curative notice, limited to Southern California service technicians, because the February 23, 2015, email (1) takes a legal position on the definition of compensable "work," and (2) threatens discipline, up to and including termination, for the activity to which GE's service technicians would necessarily admit by joining the collective action. However, the Court will not prohibit Defendant from communicating with putative class members for the duration of the opt-in period.

Defendant emphasizes that Mr. Guida's email does not mention the instant litigation and that there is no evidence that Mr. Guida sent the email with the purpose of deterring his technicians from opting into the lawsuit. Pointing to Mr. Guida's May 2014 and August/September 2013 emails to service technicians concerning timekeeping policies and procedures, Defendant portrays the February 2015 email as part of the regular course of business.

Plaintiffs concede that the email does not reference the litigation specifically, but argue that the email's timing

demonstrates an aim to scare putative class members and reduce participation in the suit.  During oral argument, Plaintiffs stated that they would not have taken issue with the email had Defendant sent it in May, just like Mr. Guida's virtually identical 2014 "reminder email."  However, the fact that Mr. Guida sent the email between the initial notice and the reminder notice, scheduled for March 13, 2015, suggests that this litigation acted as the catalyst for that communication.

    The opt-in period is a sensitive time in a FLSA litigation.  Although the coercive nature of the employment relationship is insufficient on its own to warrant a limitation on an employer's ability to communicate directly with putative class members, courts should intervene when those communications address the particular employment issues implicated in the pending lawsuit in a misleading manner that would discourage a reasonable employee from opting into the litigation.  Here, Mr. Guida's email categorically defines the kind of activity for which Plaintiffs seek compensation in this litigation as non-compensable.  A lay reader would interpret the email's language regarding discipline for "off the clock" work, though framed in the future tense ("failure to abide by these instructions *will be* considered insubordination"), as applying to past "off the clock" work as well.  For these reasons, service technicians who received this email would reasonably believe that opting into

the litigation was pointless based on the definition of "work," or, worse, that they would risk their jobs by admitting to that kind of activity, a necessary consequence of opting-in.

Mr. Guida's email may mirror earlier messages to service technicians about timekeeping and address some topics not at issue in this case, but these facts do not necessarily foreclose a finding that the email, when Mr. Guida sent it, threatened the proper functioning of the litigation. Further, Defendant does not explain why Mr. Guida sent the similar 2014 email in May, but the 2015 email three months earlier.[3] It concerns the Court that Defendant has been emphasizing timekeeping policies, and the harsh consequences for not following them, more frequently during this relatively short opt-in window without any other stated intervening cause.

In order to correct any potential confusion as to the viability of the claims in this litigation and the consequences of opting-in, the Court will grant Plaintiffs' request for an order requiring Defendant to send a curative notice, but limits the notice to the Southern California Region service technicians who received Mr. Guida's February 23, 2015 email. The notice

---

[3] There is some confusion with regards to the purpose of the email that forces the Court to question its timing. Defendant suggests that the February 23, 2015 email was a "follow-up" to the Fast Start meeting. However, Mr. Guida states in his Declaration that, while there were indeed other follow-up emails to the meeting, the February 23, 2015 email, like the May 2014 message was simply a periodic "reminder email." (Guida Decl. ¶¶ 8-9)

shall state, in part, that no service technicians will be subject to discipline if they opt into the lawsuit for working "off the clock" during this case's class period.[4]  In addition, the Court will extend the opt-in period for Southern California Region service technicians for thirty (30) days from the current April 28, 2015, deadline to May 28, 2015.  The curative notice shall reflect this extension of the opt-in period as well.  Last, for the duration of the opt-in period, Defendant shall submit to the Court copies of all further communications between Defendant and members of the putative class concerning timekeeping policies and procedures within one week following such communications.

    Importantly, the Court does not hold that Defendant cannot communicate with its employees about timekeeping.  The Court recognizes the First Amendment concerns raised in limiting an employer's ability to communicate with its employees and has tailored the above-described remedy so as to avoid placing a prior restraint on Defendant's speech.  This decision merely requires Defendant to account for a particularly problematic email and creates a monitoring system for the remainder of the opt-in period.

---

[4] Based on the notice sent to potential class members, the class period runs from January 23, 2011, to January 28, 2015 (the original notice date). (Notice, Ex. 1-B to Pls.' Ltr.)

**IV.**

For the reasons set forth above and in the manner described herein, the Court will **GRANT** Plaintiff's motion in part.  An appropriate Order accompanies this Opinion.


Date: March 23, 2015

                                            s/ Joseph E. Irenas
                                       **Joseph E. Irenas, S.U.S.D.J.**