IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

DONALD MADDY, et al.,
*Individually, and on behalf of
all others similarly situated*,

      Plaintiffs,

   v.

GENERAL ELECTRIC COMPANY,

      Defendant.

Civil No. 14-490-JBS-KMW

## OPINION

In this action, Plaintiffs, individually, and on behalf of all others similarly situated, and Defendant General Electric Company ("Defendant" or "GE") have agreed to settle this collective and class action resolving Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and various state wage and hour statutes.  On January 6, 2017, the Court granted Plaintiffs' unopposed motion seeking preliminary approval of the settlement.[1]  Before the Court now is Plaintiffs' Motion seeking final approval of the settlement.  For the reasons that follow, the Motion is granted.

**I.    BACKGROUND**

---

1 This Court has jurisdiction to decide the preliminary motion for approval

A. Procedural History and Facts

On October 25, 2013, Rolando Alvarez and other GE service technicians filed a collective and class action law suit, *Alvarez v. General Electric Company*, Civ. No. 13-62333, in the United States District Court for the Southern District of Florida. Pls.' Mot. Preliminary Approval 2. On January 23, 2014, Donald Maddy and other GE service technicians filed this collective and class action law suit against GE, but in the District of New Jersey alleging that GE failed to pay overtime. Pls.' Mot. Preliminary Approval 2-3. The *Alvarez* lawsuit was transferred to the District of New Jersey and, ultimately, was consolidated with this lawsuit. Pls.' Mot. Preliminary Approval 3.

This Court is fully familiar with the litigation efforts of both parties' counsel in this case having managed the pretrial phase of litigation. In this regard, the parties have intensely litigated this matter for three years. Also, according to Plaintiffs' submission, counsel has reviewed thousands of documents and millions of data points, engaging expert witnesses to assist with same, and deposed 50 witnesses. Pls.' Br.[2] 1, 4. Indeed, this Court has been called upon to resolve several significant discovery disputes and, for those matters that could not be

---

and this motion seeking final approval of the settlement pursuant to the parties' consent to this Court's jurisdiction.

2 Pls.' Br. refers to Plaintiffs' "Memorandum of Law in Support of Plaintiffs'

resolved, the parties were permitted to file, and the Court had to decide, several discovery motions.

B. Settlement Negotiations

In August of 2016, Plaintiffs provided GE with a settlement demand letter. Pls.' Mot. Preliminary Approval 3. Thereafter, the parties agreed to attend mediation. *Id.* On November 29, 2016, the parties attended a mediation session before the Honorable Diane M. Welsh (Ret.) and, with Judge Welsh's assistance, were able to reach a settlement agreement. *Id.*

C. Terms of the Settlement

While denying liability and disputing damages, GE has agreed to pay $9,500,000 to settle all claims in this action. Joint Settlement and Release [Doc. No. 283], § 3.1(A). The settlement terms are as follows: The $9,500,000 shall be placed into an Escrow Account for which the Claims Administrator will administer the Notice of Settlement, the allocation, and distribution, of the Settlement Payments. *Id.* at § 2.1. Class Counsel seeks an award of $3,166,666 (33 1/3%) of the settlement payment as an award for attorneys' fees. *Id.* at § 3.2 (A). Litigation costs and expenses and the Claims Adminstrator's fees shall also be paid from the settlement payment. *Id.* The net settlement payment shall be disbursed to members of the Rule 23 and FLSA collective action

---

classes based on the following agreed upon formula:

> All Qualified Class Members who are Non-Opt-In Plaintiffs shall receive a flat $750 payment and shall also be awarded 1 point for each workweek worked during the class period. All Qualified Class Members who are Opt-in Plaintiffs shall receive a flat $1,500 payment (representing the $750 awarded to Non-Opt-In Plaintiffs in addition to $750 in liquidated damages available pursuant to the FLSA) and shall also be awarded 2 points for each workweek worked during the class period. After subtracting from the Net Settlement Payment all amounts paid pursuant to subsections 3.4(A)(1 and 2), the dollar value of each point shall be computed by dividing the remainder of the Net Settlement Payment by the number of points awarded under subsections 3.4(A)(1 and 2). Each Qualified Class Member shall receive a total settlement distribution of the total of the flat payment in addition to the dollar value of the number of points awarded under this allocation. Non-Opt-In Plaintiffs' payments shall be reported as taxable wages and shall be issued a W2 form for the entire payment. Opt-In Plaintiffs' payments shall be 50% taxable wages, which will be reported on a W2, and 50% liquidated damages, which will be reported as non-wage income on a 1099.

*Id.* at § 3.4(A)(1-5).

Pursuant to the terms of the settlement, Plaintiffs and each Qualified Class Member agree to fully release General Electric (and Haier U.S. Appliance Solutions, Inc.) from all state and federal wage and hours laws through December 31, 2016. *Id.* at § 4. The Settlement Agreement also contains a confidentiality provision wherein the parties agree that they will not publicize the terms of the Agreement. *Id.* at § 5.13.

D. Preliminary Approval and Notice

On December 1, 2016, at the request of counsel, the Honorable

---

Attorneys' Fees, Reimbursement of Costs, and Service Payments [Doc. No. 286].

Jerome B. Simandle, then-Chief United States District Judge, referred the Motions for Preliminary Settlement Approval, Motion for Rule 23 Certification of Settlement Class, and Motion for Final Settlement Approval to this Court. On December 28, 2016, by stipulation of the parties, Plaintiffs filed the Third Amended Complaint [Doc. No. 278]. On the same day, Plaintiff filed the Motion [Doc. No. 279] seeking preliminary approval of the class settlement and provisional certification of the settlement class. This Court held a hearing to address said Motion on January 3, 2017. As a result, the Court entered an Order preliminarily approving the proposed settlement; certifying the settlement class for settlement purposes only; appointing Swartz Swidler, LLC, Robert D Soloff P.A., and Alan Eichenbaum, Esquire, as class counsel' and preliminarily approving counsel's requested fee of 33 1/3%. *See* Order [Doc. No. 285], Jan. 6, 2017. The Court also scheduled a hearing for final approval of the settlement for May 17, 2017. *Id.*

The Notice was sent to over 1,450 class members. Pls.' Br. 1. As a result, five class members opted out and, while there was nearly one objection (see discussion on Plaintiff Rolando Ortiz), there have been no objections to the settlement. *Id.* at 1-2.

E. Plaintiff Rolando Ortiz

On the eve of the hearing to address the Motion seeking final

approval of the settlement, the Court received a letter [Doc. No. 287] from Plaintiff Rolando Ortiz, Jr., requesting to be heard on the settlement. Thus, during the May 17, 2017, the Court permitted Mr. Ortiz to be heard. To this end, Mr. Ortiz had many questions about the settlement and claimed not to have proper notice of the settlement. As a result, the Court continued the hearing until May 24, 2017 to permit counsel time to provide the Court with verification that Plaintiff Ortiz had in fact received the Notice.

During the May 24, 2017 hearing, the Court ultimately determined that it was satisfied that Plaintiff received notice of the settlement and, obviously, the original hearing date. The Court permitted Plaintiff Ortiz to be heard again. Moreover, counsel for Plaintiffs explained the parameters of the settlement in detail on the record for the benefit of Plaintiff Ortiz. Ultimately, Plaintiff Ortiz decided to remain a member of the class and, thus, is not objecting to this settlement.

## II. DISCUSSION

### A. Final Approval of the Class Action & Collective Action Settlement

Plaintiffs seek approval of the settlement of the class and collective actions. There are differences which exists between a Rule 23 class action and FLSA collective action. In this regard, in a traditional Rule 23(b)(3) class action, class members are

automatically members of the class whereas prospective class members in a FLSA collective action must affirmatively opt-in to be bound by any judgment. *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 WL 1344745, at \*18 (D.N.J. Apr. 8, 2011). In determining whether to approve a Rule 23 class action settlement, the Court considers whether the proposed settlement is fair, reasonable and adequate. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). As an initial matter, class settlement is entitled to a presumption of fairness where the negotiations occurred at arm's length, after sufficient discovery, where the proponents of the settlement were experienced in litigation and only a small fraction of the class objected. *Bredbenner,* 2011 WL 1344745, at \*10. Here, the parties engage in mediation with Judge Welsh after years of discovery, counsel has immense experience in wage-and-hour class actions, two of Plaintiffs' attorneys having litigated about 90 other matters, and there have been no objections from the class. Thus, there is a presumption that this settlement is fair.

Moreover, fairness in the Rule 23 class action settlement is determined by considering the factors articulated in *Girsh v. Jepson,* 521 F.2d 153, 156-57 (3d Cir. 1975)("*Girsh* factors"). Those factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157.

For FLSA collective action settlements, "the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute."[3] *Bredbenner*, 2011 WL 1344745, at *18. Courts, while expressly acknowledging that the Third Circuit has not definitively set out factors for evaluating the fairness of FLSA collective action settlements, have also utilized the *Girsh* factors in evaluating fairness. *Brumley v. Camin Cargo Control, Inc.*, 08-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012).[4]

---

3 There are several bona fide disputes for this action including: 1) whether the Plaintiffs should have been compensated pre-shift computer time; 2) whether Plaintiffs should have been compensated for their drive time to their first assignment; and 3) whether Defendant's requirement of certain revenues per day caused Plaintiffs to work off-the-clock during the half hour daily lunch break. Pl. Mot. 4. Thus, this settlement resolves several bona fide disputes.
4 The Court notes that in *Brumley* the court rejected a confidentiality provision contained within the settlement agreement noting that if an employee were to violate the restrictive provision, Defendant could sue for breach of contract. Here, the Settlement Agreement also contains a confidentiality provision, however, the document itself is filed publicly which negates the confidential nature of same and the agreement does not contain a disgorgement

Thus, the Court will evaluate the fairness of the settlement of both the class and collective actions together.

   i.   *complexity, expense and likely duration of the litigation*

   The complexity, expense and duration of this litigation weighs in favor of approving the settlement. "This factor is intended to 'capture the probable cost, in both time and money, of continued litigation.'" *Bredbenner*, 2011 WL 1344745, at 11. In support of this factor, it is argued in the brief that this litigation involves complex allegations that Defendant violated state and federal wage and hour laws by failing to pay Class Members. Pls.' Br. 3-5. Specifically, Plaintiffs contend that they were not paid for morning computer time, drive time prior to reaching their first customer and, based on the revenue per day requirement, time they spent working off-the-clock during their lunch break to meet Defendant's requirement. *Id.* Plaintiffs contend that through discovery, it is their view, that, on average, they have established that Plaintiffs have worked five or more hours per workweek unpaid based on Defendant's policy of excluding said time. *Id.* Of course, these allegations are heavily contested by Defendant.

---

clause. *Lovett v. Connect America.com*, No. CV 14-2596, 2015 WL 5334261, at *6 (E.D. Pa. Sept. 14, 2015)(finding that the confidentiality provision did not frustrate the purpose of the FLSA; the agreement contained a confidentiality provision, providing for disgorgement if same was violated, however, the settlement agreement was not sealed). Thus, the Court does not find that the inclusion of the provision renders the settlement unfair or that the provision

Moreover, Plaintiffs contend that this case was extensively litigated for three years. *Id.* The extent of the litigation can be summarized as follows: Defendants have taken depositions of 30 named and selected Opt-in Plaintiffs; Plaintiffs took 20 depositions of managers as well as two 30(b)(6) depositions; both parties had to engage ESI experts to review and analyze thousands of documents and millions of data points; there have been at least 10 motions filed, and opposed. *Id.* Plaintiffs contend that without settlement, the complexity of this case would have required more expert reports and discovery prior to trial and then, after trial, an inevitable appeal process. *Id.* Thus, the expense in continuing the litigation would have been great. *Id.*

Here, having managed all aspects of pretrial discovery, the Court can take notice of the time, complexity and expense of litigating this case. As noted previously, pretrial discovery, along with the discovery disputes and motions, alone was complex and expensive. Indeed, prior to settlement, the parties were still engaged in discovery three years into this case and there was the prospect of additional discovery motions. Thus, the Court accepts the statements of Plaintiffs that moving this case to a conclusion would require the parties to expend a considerable amount of time and money. Settlement of the claims at this juncture appears to be

---

needs to be stricken.

the appropriate, least expensive course of action.

 *ii. reaction of the class to the settlement*

 In this regard, the Court "looks to the 'number and vociferousness of the objectors.'" *Bredbenner*, 2011 WL 1344745, at *12.  Here, there are no objections to the settlement and only five Class Members, out of about 1456, have opted-out.  While one Class Member, Mr. Ortiz, expressed displeasure about the settlement, after a hearing wherein counsel thoroughly explained the terms of the settlement, Mr. Ortiz decided to remain a Class Member and has no objection to the settlement.  Moreover, the Court notes that the Notice, having preliminarily approved same, was written in a manner to apprise Class Members of the right to object to the settlement.  Thus, this Court determines that the reaction of the class to the settlement supports approving same.

 *iii. stage of the proceedings and discovery completed*

 In evaluating this factor, courts focus on "the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745, at *12.  "For the proceedings to be sufficiently developed to foster a fair settlement, the parties must have 'an adequate appreciation of the merits of the case before negotiating.'" *Id.*  To adequately assess same, courts look to the type and amount of discovery completed.  *Id.* "In general, post-discovery settlements are more likely to be fair and

11

reflective of the true value of the claims in the case." *Id.*

As highlighted in consideration of the first *Girsch* factor, Plaintiffs argue at the time of settlement extensive discovery had taken place: Defendant had produced a vast amount of computer records and GPS data; 50 depositions had been taken; massive amounts of ESI and extensive written discovery had been exchanged; and an appeal to the Third Circuit regarding compelling arbitration of several hundred Class Members had been concluded. Pls.' Br. 6-7. Thus, Plaintiffs contend that the parties fully understood the strengths and the weaknesses of the case when the settlement was negotiated.

The Court agrees. This factor weighs in favor of approving the settlement. As stated before, this case was ripe for settlement discussions. The parties have had the benefit of years of discovery and, thus, massive amounts of information to review and analyze whether same was supportive of their respective positions. While discovery was not concluded at the time of settlement, it was substantially complete and certainly was at a point where an analysis of the strengths and weaknesses of the case could be made to gauge whether settlement was the appropriate course of action.

*iv.    risks of establishing liability & damages*

The Court considers *Girsh* factors four and five together. In

evaluating the risk of establishing liability and damages, courts balance "the likelihood of success, and the potential damages award, against the immediate benefits offered by settlement." *Bredbenner*, 2011 WL 1344745, at *13. Where the risks are high, these factors weigh in favor of settlement. *Id.* The Court notes that its duty is not to "press into the merits of the case" but instead to rely, to an extent, on counsel's estimate of the risks of establishing liability and damages as they are most familiar with the intricacies of the case. *Id.*

Plaintiffs concede that there is considerable risk in establishing liability and damages, despite their belief that they have meritorious positions as to liability and damages. Pls.' Br. 7. Plaintiffs assert that at the time of settlement, Defendant was seeking discovery into Plaintiffs' personal mobile devices and Plaintiffs were pursuing discovery regarding Defendant's computer systems, both of which would have added to the length of the litigation. *Id.* Moreover, Plaintiffs argue that they still had to seek final certification, Defendant intended to file a motion to decertify, and both parties were going to file summary judgment motions. *Id.* Additionally, establishing damages, the amount of time Plaintiffs worked off the clock, was not without risk based on the fact that there were no time records. *Id.* at 7-8. Notably, Plaintiffs argue that establishing damages on a class-wide basis

would require Plaintiffs to establish that the time spent by Plaintiffs constituted compensable work and a reasonable basis for determining the amount of hours they worked during that time; time owed to each Class Member had to be established through representative testimony before a jury. Pls.' Br. 8-9. Plaintiffs contend that establishing same is inherently risky. *Id.*

Here, accepting counsel's estimates on the risk of establishing liability and damages, the Court finds that this factor weighs in favor of approval. Counsel for Plaintiffs had several hurdles to establishing liability and then damages. First, setting aside the issues of certification, counsel for Plaintiffs would have to prevail on a summary judgment motion and they would have to successfully oppose Defendant's summary judgment motion. Counsel represents that there are some risks associated with same. Similarly, one can never predict the outcome of a jury trial. Indeed, counsel for Plaintiffs aver in this case a jury trial would be inherently risky in establishing damages as same would have to be proven through representative testimony. The Court balances the foregoing with the fact that this settlement provides finality. In this regard, Class Members will benefit from a cash settlement now rather than waiting for the outcome of dispositive motions, a jury trial and, thereafter, the appeals process. There is a significant benefit to settlement.

*v.     risks of maintaining the class action through the trial*

The significance of this factor in cases where a settlement class is sought has been called in to question by the Third Circuit. *Bredbenner*, 2011 WL 1344745, at *14. (citing *Prudential,* 148 F.3d at 321). Plaintiffs rely upon such an argument in their brief as well. Pls.' Br. 9. Notwithstanding the foregoing, Plaintiffs argue that they are realistic about the risks of maintaining class certification and have also argued that Defendant would seek to decertify the class. Pls.' Br. 9. Thus, there would be apparent risks of maintaining the class action as certification would definitely be opposed by Defendant. This factor weighs in favor of settlement.

*vi.     ability of the defendants to withstand a greater judgment*

Plaintiffs argue that Defendant's ability to pay was not a factor in settlement negotiations, thus, the Court has no evidence of whether Defendant could withstand a greater judgment. This factor does not weigh for or against the settlement. *Bredbenner*, 2011 WL 1344745, at *14 (finding that this factor did not favor or disfavor settlement).

*vii.   range of reasonableness of the settlement fund in light of the best possible recovery & all the attendant risks of litigation*

Finally, the eighth and ninth *Girsh* factors weigh in favor of approving the settlement. In evaluating this factor the Court

15

looks to whether "the settlement represents a good value for a weak case or a poor value for a strong case." *Bredbenner*, 2011 WL 1344745, at *15 (citing *In re Warfarin*, 391 F.3d at 538). To this end, the Court must "analyze the reasonableness of the settlement against the best possible recovery and the risks the parties would face if the case went to trial." *Bredbenner*, 2011 WL 1344745, at *15.

Plaintiffs acknowledge that their recovery could be greater if they win at trial and survive through appeal. How much greater has not been quantified for the Court, but the Court surmises that on Plaintiffs' best day, surviving dipositive motions, decertification, trial and a possible appeal, that amount would far exceed the settlement fund. Nonetheless, the Court finds here the attendant risk of continued litigation renders this settlement reasonable. As the Court stated, Plaintiffs' best recovery can only be attained by continued litigation and after a favorable result from each of the remaining stages of litigation. At this point, the fact is that Plaintiffs have not yet established that the time they seek compensation for is in fact compensable. As noted before, Plaintiffs assert several different theories of liability. Even if they are successful in establishing one theory, they will not necessarily be successful on the remaining theories. This alone will impact their best possible recovery. Thus, as is

apparent to this Court and as recognized by Plaintiffs' counsel, there are risks to not only maintaining class certification, but also to establishing liability, and, if liability is established, establishing damages. A $9.5 million settlement appears reasonable in light of all the attendant risks of proceeding.

After consideration of the *Girsh* factors, all, but one, weigh in favor of approving the settlement, thus, the Court approves the settlement of the class and collective actions.

B. Attorneys' Fees and Expenses

Class Counsel seek a fee award of $3,166,666 and $180,988.61[5] in costs. In support of the requested fees, it is argued that Class Counsel took this case on a pure contingency basis and agreed to receive nothing, including waiving recoupment of all costs, if the class did not obtain recovery in this matter. Pls.' Br. 11. To date, it is argued that Class Counsel has dedicated 3,000 hours of attorney time in litigating this matter. Pls.' Br. 11-12; Soloff Decl.; Swidler Decl.; Eichenbaum Decl. Counsel has provided full documentation of the hours billed and costs expended. The Court has preliminarily approved the requested fees.

Pursuant to the percentage-of-recovery method, the fee sought is equivalent to 33 1/3 % of the total settlement. *See Bredbenner*, 2011 WL 1344745, at *19 (percentage-of-recovery method is the

---

5 The costs were sufficiently documented, are reasonable, and far below the

prevailing methodology in the Third Circuit for wage-and-hour
cases). "[T]he Court must determine whether the percentage of
total recovery that the proposed award would allocate to attorneys
fees is appropriate 'based on the circumstances of the case.'" *Id.*
(citing *Cendant Corp. Litig.,* 264 F.2d at 256). Courts consider
several factors in determining the appropriateness of a fee award:
(1) the size of the fund created and the number of persons
benefitted; (2) the presence or absence of substantial objections
by members of the class to the settlement terms and/or fees
requested by counsel; (3) the skill and efficiency of the attorneys
involved; (4) the complexity and duration of the litigation; (5)
the risk of nonpayment; (6) the amount of time devoted to the case
by plaintiffs' counsel; and (7) the awards in similar cases.
*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir.
2000).[6] The Court will consider each factor in turn.

> i.   *Size of Fund and Number of Persons Benefitted, Presence*
>      *or Absence of Substantial Objections, & Awards in Similar*

---

original estimate of the costs in the case.
[6] "In addition to the *Gunter* factors, the Third Circuit has suggested that
courts 'cross-check' its fee calculation against the lodestar award method."
*Bredbenner*, 2011 WL 1344745, at *19 (citing *Gunter*, 223 F.3d at 195 n.1).
"The multiplier is determined by dividing the requested fee award, determined
from the percentage-of-recovery method, by the lodestar." *Id.* at *21. Here,
the number of attorney hours, 3,033.4, times the hourly rate, $500, is
equivalent to $1,516,700. This is the loadstar. Next, dividing the requested
fee award, $3,166,666, by the loadstar, $1,516,700, yields a multiplier of
2.09 which is reasonable. *Id.* (determining that the 1.88 multiplier was quite
reasonable because the Third Circuit has recognized multipliers ranging from
one to four in common fund cases).

*Cases*

As an initial matter, the common fund here is $9.5 million for about 1456 Class Members.[7] As expounded upon more thoroughly in addressing the *Girsh* factors, there is tremendous benefit to the Class Members in light of the stage of the litigation, the remaining hurdles prior to even arriving at a trial date, and the risks associated with continued litigation.

Indeed, the award here is more than those awarded in similar cases. In *Bredbenner*, relied upon heavily by this Court since it too considered the settlement of class action and collective action claims, the common fund was $3 million for over one thousand class members. Moreover, the court in *Bredbenner* referred to the size of the fund and the number of class members in two other wage-and-hour cases: *In re Janney*, No. 06-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009)-$2.9 million for 1,310 class members and *Chemi v. Champion Mortgage*, No. 05-1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009)-$1.2 million for 917 class members. Thus, the award here far exceeds awards in other wage-and-hours cases. These factors weigh in favor of the fees requested.

ii. *Skill and Efficiency of Class Counsel & Complexity and Duration of Litigation*

---

[7] None of the Class Members have objected to the amount of attorney's fees and costs sought.

"The skill and efficiency of class counsel is 'measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.''" *Bredbenner*, 2011 WL 1344745, at *20 (citing *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)).

This Court, having managed all aspects of discovery, can take notice of the fact that the issues in this case were thoroughly contested and this matter was "hard-fought" by skilled, professional counsel. First, the quality of the result has been previously stated in addressing the *Girsh* factors and the size of the fund in relation to the number of Class Members who will benefit.

Second, Plaintiffs' counsel has substantial experience litigating wage and hours class actions. Indeed, attorneys Mr. Swidler and Mr. Swartz have litigated 90 cases within the last 5 years. Pls.' Br. 14-15. However, here, there were two other attorneys also with extensive experience in litigating these matters—Mr. Soloff and Mr. Eichenbaum. Notably, the Court agrees, counsel for Plaintiffs achieved favorable results notwithstanding that Defendant was represented by Littler Mendelson, the largest,

and one of the most respected, labor and employment law firms in the nation.  Pls.' Br. 16.  Thus, counsel for Plaintiffs had a formidable opponent and there were many difficulties throughout the course of the litigation from the motion for class certification to the many discovery disputes and motions argued by counsel. *Bredbenner*, 2011 WL 1344745, at *20 ("the ability to achieve a favorable result in a case involving such formidable defense counsel is a clear indication of the skill with which class counsel handled these cases.").

Finally, the skill and efficiency of counsel is further evidenced by the timing of the settlement.  This matter was settled prior to the filing of motions relating to class certification, summary judgment motions and trial.  *Id.* (noting that the ability to bring the case to a close prior to trial is another indication of the skill and efficiency of the attorneys).  Notwithstanding the timing of the settlement, counsel settled this matter for a favorable amount that, as discussed above, was more than three other referenced wage-and-hour settlements with comparable class sizes.  This factor weighs in favor of the requested fees.

*iii. Risk of Nonpayment & Time Devoted by Counsel*

Simply stated, class counsel took this case on a pure contingency basis, waiving recoupment of all costs, and dedicated 3,000 hours of attorney time in litigating this matter. This factor

weighs in favor of the fees requested.

C. Administrator's Fees and Costs

The Court has previously appointed Angeion Group to administer the settlement. Here, pursuant to the terms of the settlement agreement, Angeion is to be paid out of the Settlement Fund. Angeion's tasks include: effectuating Notice required by 28 U.S.C. §§ 1715(a) and (b), disseminating the Notice and Consent Form via mail and email; receiving and reviewing Consent Forms submitted by Settlement Class Members; receiving and tracking requests for exclusion and objections; responding to Class Member inquiries; preparing and mailing Settlement Award checks to all Eligible Settlement Class Members; and any additional tasks as the parties mutually agree upon or the Court orders Angeion to perform. Revised Declaration of Settlement Administrator ("Administrator Decl.") ¶ 4, Doc. No. 291. Angeion's fees to date, which include estimates for tasks that have yet to be performed, are $35,597.67. *Id.* at ¶ 25, Ex. K. The Court approves this amount and will permit up to a 10 percent upward deviation from said figure, if necessary. Thus, if after the Settlement Administrator completes all of its tasks and its costs exceed the foregoing, any additional amounts must be approved by the Court.

D. Service Payments to Named Plaintiffs

Finally, the Court considers whether or not to approve the

requested service payments to Named Plaintiffs.  Service payments are common in class action litigation involving a common fund and are intended to compensate plaintiffs for risks incurred and services they provided.  *Bredbenner,* 2011 WL 1344745, at *22.

Here, the Notice informed all Class Members that each Named Plaintiff[8], in addition to David Leppo and Guy Leone, would request a service fee in the amount of $5,000, totaling $75,000.  There were no objections to the service payments.  The service payments are sought to compensate the Named Plaintiffs for the risks incurred by bringing this suit against a large company who is also their employer.  Soloff Decl. ¶¶ 25-27.  More importantly, the service payments compensate these particular individuals for their participation in this lawsuit.  *Id.*  Specifically, these Plaintiffs provided detailed factual information regarding their job duties and hours worked, Defendant's timekeeping and pay practices, and the off the clock work performed by Class Members.  *Id.*  These Plaintiffs assisted with preparation of the pleadings and helped prepare and execute declarations.  *Id.*  Moreover, these Plaintiffs had to participate in discovery by responding to written discovery, producing documents, and preparing and sitting for depositions.  *Id.*  Indeed, again based on the Court's knowledge of the case based

---

8 "Named Plaintiffs" refer to Donald Maddy, Kurt Fredrick, Fredrick R. Shellhammer, III, Frank Michienzi, Lance Bergmann, Anthon Chelpaty, William Madden, Steve Le Blanc, Jeffrey Scott Wilkerson, Jeffrey Navarette, Phillip

on its pretrial management of same, in April of 2016, the Court entered an Order allowing Defendant discovery of ESI contained on select Plaintiffs' private cell phones. Order [243], August 18, 2016. Other Class Members were not subjected to such personal intrusions in order to advance this litigation. The Court finds the service payments to be fair and within a reasonable range. *See Bredbenner,* 2011 WL 1344745, at *22-23 (awarding $10,000 for each service member).

Thus, the Court approves the request for service payments for the Named Plaintiffs, David Leppo, and Guy Leone in the amount of $5,000, totaling no more than $75,000.

## III. CONCLUSION

Based on the foregoing, the Court approves the settlement agreement, class counsel's requested fees and costs, the Claims Administrator's fees and costs and the service payments. A separate Order will issue.

Date: June 26, 2017      s/ Karen M. Williams
                                      KAREN M. WILLIAMS
                                      UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jerome B. Simandle

---

Eric Benson, Bradley Palmer and Thomas Kiss. Soloff Decl. [Doc. No. 286-2], at ¶25.